James William **IRWIN**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A04–0008–CR–365.

Court of Appeals of Indiana.

March 19, 2001.

Thomas J. O'Brien, O'Brien & Dekker, Lafayette, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

James William Irwin appeals his conviction and sentence after a jury trial on one count of criminal recklessness, a class B misdemeanor, and challenges the propriety of the subsequent hearing regarding his payment of restitution.

We affirm.

### ISSUES

1. Whether sufficient evidence sustains Irwin's conviction.

2. Whether the trial court erred when it ordered that Irwin hang a picture of the crash victims in his cell in order to earn good time credit.

3. Whether the trial court erred in scheduling hearings as to Irwin's payment of restitution after he had served his sentence.

### FACTS

Irwin worked as a bartender at the Mirage Tavern in Lafayette. The Mirage opened at noon on Sunday, March 21, 1999, and at 12:03 p.m. Irwin poured Jeffrey Trout his first "double" of rum and Coke. Security cameras recorded Irwin as he poured Trout nine more such doubles, the last at 2:13 p.m. A videotape from the cameras showed that each time, Irwin would "pick up" the rum bottle "and go, one time, two times and back down . . . . back up for the third time . . . as a splash." (R. 558). For each drink, Irwin made these three movements. At 2:28 p.m., Trout left the tavern and drove away in his full size pick-up truck.

With Trout at the wheel, the truck drove onto 350 South, crossed the center lane, and crashed into a Toyota Camry occupied by Chip Smith and Sarah Towery. All three were killed. The 911 call to report the accident was at 2:40 p.m. After the accident, tests revealed that Trout's blood alcohol content was .27%.[1]

Irwin was charged with criminal recklessness as a class B misdemeanor and

---

1. Intravenous fluids were administered to Trout by emergency medical personnel, likely diluting his actual blood alcohol content at the time of the crash. Thus, an expert opined that Trout's blood alcohol content at the time of the accident could have been .29%.

also the class B misdemeanor of selling alcohol to an intoxicated person. At trial in April of 2000, the jury saw the videotape of Irwin serving Trout ten drinks at the tavern over a period of 130 minutes that afternoon. It heard testimony from a good friend of Irwin's, Linda Foster, to whom he had indicated the day after the crash that he "felt responsible for what had happened ... [b]ecause of serving [Trout] so many shots." (R. 620). Foster had been with Irwin at a number of "alcohol training" classes, in which they learned about what "alcohol does" to a person. (R. 620). The jury also heard from Angela Romack, who did bookkeeping for Trout. Romack stopped at the Mirage when she saw Trout's truck there, and she found him "drunk," with slurred speech and stumbling when he walked. (R. 277). According to Romack, it should have been "very" evident that Trout was drunk when he was in the tavern. (R. 281). A man who had worked as a bartender for 8 years, David Vanderipe, was present at the tavern on that Sunday afternoon and observed Trout. Vanderipe believed that Trout was drunk, and he testified that he would not have served Trout.

Finally, the jury heard Dr. Roger Maickel, an expert in the field of pharmacology and toxicology, testify that the body could only metabolize one drink an hour. According to Dr. Maickel, an observer familiar with the effects of alcohol, the rate at which alcohol is metabolized, the amount of alcohol in various drinks, and the number of drinks an individual consumed could evaluate how likely it was that an individual was drunk. Further, Dr. Maickel testified that after reaching a blood alcohol content of .20%, a drinker was unable to conceal the signs of intoxication, and he opined that Trout was "probably about .255, roughly" when he left the tavern. (R. 439).

The jury found Irwin guilty of criminal recklessness. On May 25, 2000, the trial court sentenced Irwin to 180 days and ordered him to hang a picture of Smith and Towery in his jail cell "so you know why you're there." (R. 755). The sentencing order specified that Irwin "not be given credit for good time" unless the picture hung in his cell. (R. 95). The trial court also ordered Irwin to pay $1,070 as the "agreed" restitution, which was to be paid by September 29, 2000, and ordered him to appear on October 5, 2000 "to show that restitution" had been "paid in full." *Id.*

Irwin completed serving his sentence of "180 days w/credit" and was released on August 23, 2000. (Ex. 1 (records from Tippecanoe County Jail), State's Motion filed October 30, 2000). According to the Chronological Case Summary, Irwin appeared before the trial court on October 10, 2000, at which time the court ordered him to appear on November 2, 2000 "to show restitution." (Supp.R.1). The court's minutes refer to the need for Irwin to appear and address whether he had paid the restitution ordered, and "civil remedies for collection" if he had not. *Id.* At the November 2 hearing, the trial court determined that Irwin had "failed to pay restitution," and the court "enter[ed] restitution as a civil judgment." *Id.*

## DECISION

### 1. *Sufficiency*

■ "In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Scruggs v. State*, 737 N.E.2d 385, 386 (Ind. 2000).

■ The information charged that on March 21, 1999, Irwin "recklessly, knowingly or intentionally" served "ten (10) alcoholic beverages to Jeffrey Trout within two and one-half hours, which created a substantial risk of bodily injury to another

person, to wit: general public." (R. 10). Indiana Code § 35–42–2–2(b) provides that one "who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person ... commits criminal recklessness, a class B misdemeanor." One "engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c).

Irwin argues that the State failed to present sufficient evidence that his conduct was reckless and created a substantial risk of bodily injury to another person because the "mere fact that a bartender serves ten (10) drinks to a person in over a two (2) hour period does not make him guilty of Criminal Recklessness." Irwin's Brief at 6. Inasmuch as the evidence before the jury consisted of much more than the "mere fact" of Irwin's having served ten drinks, we cannot agree.

The jury watched a videotape which various witnesses testified showed Irwin pouring Trout ten *double*-plus drinks of rum. Dr. Maickel testified about the process of intoxication, how its effects could be observed, and the evidence as to Trout's actual intoxication. Foster testified that Irwin had been taught about the effects of alcohol and that he had told her he felt responsible for the crash because he had served so many drinks to Trout. Romack and Vanderipe both testified that Trout appeared to be drunk. From this evidence, the jury could reasonably find beyond a reasonable doubt that by serving Trout those ten double drinks over a period of 130 minutes and then allowing him to leave, Irwin had unjustifiably disregarded the harm that might result, thereby performing an act that created a substantial

risk of bodily injury to the general public. Sufficient evidence supports the conviction.

### 2. *Good Time Credit Condition*

■ Irwin next claims the trial court erred in requiring him to hang a picture of Smith and Towery in his cell as a condition of receiving good time credit. He argues that the trial court was without authority to do so.

■ As the State responds, this claim is moot because no relief in this regard can be granted to Irwin inasmuch as he has already served his sentence and received good time credit. As we said in *Richardson v. State*, 402 N.E.2d 1012, 1013 (Ind. Ct.App.1980), the appellate court does not "engage in discussions of moot questions or render advisory opinions." Hence, once the appellant's "sentence has been served, the issue of the validity of the sentence is rendered moot." *Id.* Accordingly, Irwin's claim on this issue must fail.[2]

### 3. *Restitution Hearings*

■ Finally, Irwin asserts that the trial court erred when—after he had completed serving his sentence—it ordered him to appear at a hearing on the payment of restitution. He claims that the restitution order "became a judgment in favor of the victims" and the trial court should not have "use[d] its authority to enforce the judgment." Irwin's Brief at 11. He asks that we vacate the post-sentence hearing.

Again, as the State notes and as indicated in FACTS, the hearing as to whether Irwin had paid restitution has already occurred, on November 2, 2000. Thus, any decision on the claim that the hearing should now be ordered vacated would be without effect, and consequently advisory only. *See Richardson*, 402 N.E.2d at 1013. Moreover, before the hearing, the trial court indicated that the hearing was part of the civil collection process; and at the

---

**2.** Criminal statutes are to be strictly interpreted and Irwin is correct in his assertion that the trial court was without authority, pursuant to Ind.Code § 35–50–6–5 (Deprivation of credit time), to have imposed a condition for his earning of good time credit and we strongly urge the trial court not to do so in the future. *See also,* Ind.Code § 35–50–6–4.

conclusion of the hearing, the trial court did enter the restitution order as a civil judgment, as contemplated by the statute cited by Irwin. We find no error here.

We affirm.

RILEY and ROBB, JJ., concur.