**Thomas SAMM, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 46A03–0804–CR–143.**

Court of Appeals of Indiana.

Sept. 22, 2008.

---

Donald W. Pagos, Michigan City, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Shelley M. Johnson, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Thomas Samm, Jr. (Samm), appeals the trial court's Order denying his motion to reduce bond.

We remand for further proceedings.

### ISSUE

Samm raises one issue for our review, which we restate as: Whether the trial court abused its discretion when it denied his motion to reduce the requirement of a $100,000 cash-only bond for his release from jail pending resolution of the charges against him.

### FACTS AND PROCEDURAL HISTORY

On July 21, 2007, Samm was stopped by officers of the Michigan City Police Department for a traffic offense. During the traffic stop, 13.8 grams of cocaine were found in Samm's car. Samm was taken to the Michigan City Police Department, questioned by police, and then asked if he would be willing to make controlled buys of cocaine in exchange for leniency. He agreed to do so and was released from custody and not charged at that time.

On July 25, 2007, the State filed an Information in LaPorte County Circuit Court, cause number 46D01–0707–FB–402, charging Samm with two Counts of dealing in cocaine, as a Class B felony, Ind.Code § 35–48–4–1, based on events alleged to have occurred on April 26 and May 9, 2007.[1] An arrest warrant was issued for Samm, but he was not arrested. Around this time Samm was contacted by an officer, who asked Samm to make a controlled buy of cocaine. On July 27, 2007, Samm purchased cocaine while wearing a recording device as requested, and was allowed to return home after the buy. A short time thereafter, Samm learned of the warrant and asked a Michigan City Police officer who he had worked with about the warrant. The officer told Samm not to worry about it, and asked him to make another drug purchase. On August 9, 2007, Samm went to make that second purchase. The dealer left to get the requested drugs, and Michigan City Police officers placed Samm under arrest on the warrants for the charges filed in the LaPorte County Circuit Court. Samm bonded out on these charges on August 29, 2007.

---

1. Neither the Appellant's Appendix nor the Appellee's Appendix contain this Information. But, Appellee's Appendix does contain a case summary for cause number 46D01–0707–FB–402, which includes an entry on July 25, 2007, explaining that a warrant was issued, probable cause affidavit filed, and probable cause found. We assume that an Information was filed on or about this day as well.

On October 30, 2007, the State filed an Information charging Samm with three Counts of dealing cocaine, two as Class B felonies, and one as a Class A felony, I.C. § 35–48–4–1, in LaPorte County Superior Court No. 1, cause number 46D01–0710–FA–184. The Information alleged that Samm delivered 1.7 grams of cocaine on or about May 15, 2007, delivered 1.3 grams of cocaine on or about May 16, 2007, and delivered 13.8 grams of cocaine on or about July 21, 2007. During a probable cause hearing held that day, the State introduced inaccurate testimony that Samm was out on bond on July 21, 2007, when he was found with 13.8 grams of cocaine. At the hearing, the trial court set Samm's bond at $100,000, cash only.

On November 16, 2007, the State transferred the charges filed in the LaPorte County Circuit Court to the LaPorte County Superior Court No. 1. Although Samm had previously made bond on the charges filed with the Circuit Court, the Superior Court set bond at $25,000 for those same charges making his aggregate cash bond $125,000. On December 19, 2007, Samm moved for a reduction of bond alleging that his length of residency in the community supported a bond reduction and that he had been convicted of a prior charge in 1991, but never failed to appear in those proceedings. He also invited the imposition of reasonable restrictions on his activities and movements if he was to be released. At a status hearing on February 14, 2008, the trial court re-evaluated the bond situation and determined that a $100,000 cash-only bond would be sufficient for both of the causes, but refused to reduce the $100,000 bond requirement or make it a surety bond upon which Samm

could pay 10%. The trial court did not take evidence on Samm's motion at the status hearing because he was not prepared at that time.

On February 26, 2008, the trial court held a bond reduction hearing on Samm's motion. Samm testified that he had been a LaPorte County resident his entire forty-five-year life, lived with his mother prior to being arrested, and testified about how he learned of the charges against him and cooperated with the Michigan City Police officers.[2] The trial court denied Samm's motion for reduction of bond.

On March 27, 2008, Samm filed a Notice of Appeal, and on May 7, 2008, Samm filed his Appellant's Brief. On May 15, 2008, Samm signed a Plea Agreement for both cause numbers and agreed to plead guilty to two Counts of dealing cocaine, as a Class B felony, I.C. § 35–48–4–1, in exchange for the State dropping all other charges pending in those two causes. In addition, the parties stipulated that upon Samm's plea of guilty the trial court would alter Samm's bond to $50,000 payable by 10% cash. Sentencing was stipulated to take place no sooner than 135 days after the entry of Samm's plea of guilty. On that same day, Samm was permitted to post bond by paying $5,000 and is not being held by the State at this time.

## DISCUSSION AND DECISION

Samm argues that the trial court abused its discretion by ordering a $100,000 cash-only bond. Specifically, he contends that the trial court's bond schedule permitted a ten percent option, and the trial court abused its discretion by not following its

---

2. In addition, Samm filed a Petition for Writ of Mandamus with the Indiana Supreme Court. However, Samm has not included a copy of that Petition in the record of this appeal, and the cause number that he has provided in his Appellant's Brief does not link to the docket entry for a Petition filed by Samm. Nevertheless, Samm has informed us that the Petition was denied on May 2, 2008.

own schedule. Secondly, he argues that the trial court violated his due process rights by deviating from its own bond schedule without holding a hearing first. The State contends that this appeal is moot since Samm has been permitted to leave jail after posting $5,000.

## I. *Mootness*

■ We first address the State's contention that this appeal is moot. We typically will not engage in discussions of moot questions or render advisory opinions. *Irwin v. State,* 744 N.E.2d 565, 568 (Ind.Ct. App.2001). A case is deemed moot when no effective relief can be rendered to the parties before the court. *A.D. v. State,* 736 N.E.2d 1274, 1276 (Ind.Ct.App.2000). We have also stated that "when the controversy at issue in a case 'has ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will be dismissed.'" *Id.* That being said, Indiana appellate courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest." *Id.* "A public interest exception may be invoked upon the confluence of three elements: (1) the issue involves a question of great public importance; (2) the factual situation precipitating the issue is likely to recur; and (3) the issue arises in a context which will continue to evade review." *Jones v. State,* 847 N.E.2d 190, 200 (Ind.Ct.App.2006), *trans. denied.*

■ Samm contends that this issue is not moot because the trial court could reject his plea of guilty. He asserts that if his plea were rejected he "would be returned to the status quo, which is a $100,000 cash bond." (Appellant's Reply Brief p. 6). However, we find the fact that Samm has been released from jail by posting a $5,000 bond the controlling fact in determining whether Samm's bond challenge is moot. The previous requirement for a $100,000 cash-only bond has been disposed of; thus, we conclude that Samm's challenge to the $100,000 cash-only bond is moot.

■ Nevertheless, an exception applies to our general prohibition of determining cases that are moot. Pursuant to Indiana Constitution Article 1 §§ 16 and 17, the right to bail that is not excessive is one of constitutional proportion. Furthermore, the imposition of bail is a common occurrence, and therefore questions surrounding bond issues are likely to recur. Many bond issues are made moot by the disposition of criminal charges prior to the completion of an appeal, and therefore such issues could often evade review. Thus, we will address Samm's claims of error.

## II. *Abuse of Discretion*

Samm argues that the trial court's setting of a $100,000 cash-only bond is an abuse of discretion. Because he claims to have been treated outside of the LaPorte County Superior Court No. 1 bond schedule, he contends the formerly required bond is presumably unreasonable. We first note that his argument is based on a faulty premise. He has cited to a proposition from *Mott v. State,* 490 N.E.2d 1125, 1127 (Ind.Ct.App.1986), that "a [bond] schedule can be presumed to set a reasonable amount to assure the presence in court of the accused." Based on this language, he posits that a bond set outside of a trial court's bond schedule would be presumably unreasonable. However, *Mott* does not advance this proposition, nor do we adopt such a principle here.

Additionally, we reject Samm's contention because we are not convinced that his bond was set outside the bond schedule. Samm has presented a photocopy of the bond schedule for LaPorte County Superi-

or Court No. 1, which provides that the bond amount for a Class A felony is "$100,000 with 10% cash option." (Appellant's App. p. 18). This short phrase "$100,000 with 10% cash option" could mean either of two things: (1) the defendant has the option of paying ten percent of the total bail; or (2) the trial court has the option to permit a defendant to be freed upon paying ten percent of the total bail. We have been presented with little indication of how LaPorte County Superior Court No. 1 usually sets its bond, outside of the clear evidence that the trial court believed it held the option to require Samm to pay by cash the full amount of the bail in this case.[3] Samm states in his Appellant's Brief that "a ten percent (10%) cash bond is allowed in all cases," which, if true, would mean the "option" is that of the defendant. (Appellant's Br. p. 8). However, the bond schedule itself states that "[i]f an arrest is made before an Arrest Warrant is issued, there is no 10% cash option. The full bond amount must be posted." (Appellant's App. p. 18). Accordingly, Samm's statement is not completely accurate. Moreover, the trial court explained that its was "not treating Samm any different than other defendants with similar criminal histories, and multiple charges before the court." (Appellant's App. p. 97). The trial court should be aware of how it has handled other cases in the past. We conclude that Samm has been treated within the LaPorte County Superior Court No. 1 bond schedule.

Although we conclude that the trial court treated Samm within the parameters of its bond schedule, Samm's bond may still be excessive. Paramount considerations convince us that bail should be tailored to the individual in each circumstance. Bond schedules should serve only as a starting point for such considerations.

The Indiana Constitution, Article 1 § 17, provides: "Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption is strong." The language is clear and unambiguous; aside from the listed qualified exceptions, the section provides an unequivocal right to have bail set pending trial. See Ray v. State, 679 N.E.2d 1364, 1366 (Ind.Ct.App. 1997).

In addition to providing for a right to bail, our constitution prohibits excessive bail. Ind. Const. art. 1 § 16 ("Excessive bail shall not be required."). "A decision upon the question of excessiveness must be based upon two basic and related considerations: (1) The object of bail itself, and (2) the financial ability of the accused to provide the required amount of bail." Hobbs v. Lindsey, 240 Ind. 74, 162 N.E.2d 85, 88 (1959). The object of bail is not to effect punishment in advance of conviction. Id. Rather, it is to ensure the presence of the accused when required without the hardship of incarceration before guilt has been proved and while the presumption of innocence is to be given effect. Id.

Previously, our supreme court has stated: "Apart from the fact of the accused's financial position, the primary fact to be considered in determining an

---

**3.** Samm has provided a chronological case summary for another defendant in LaPorte County Superior Court No. 1 who was facing a Class A felony charge and was permitted to bond out by paying ten thousand dollars. (Appellant's App. p. 20). However, we cannot ascertain how similar the circumstances of that other defendant were to Samm's, and therefore cannot make any meaningful comparison to Samm's situation. Nor would this one instance give sufficient insight as to what the usual bond requirement is for persons charged with Class A felonies in LaPorte County Superior Court No. 1.

amount which would assure the accused's presence in court is the possible penalty which might be imposed by the reason of the offense charged." *Hobbs,* 162 N.E.2d at 88. However, in 1980, our legislature passed Public Law 202 sec. 1, which provided the following guidance for our trial courts to determine the appropriate amount of bail:

> Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court or to assure the physical safety of another person or the community if the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community. In setting the amount of bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance, including:
>
> (1) the length and character of the defendant's residence in the community;
>
> (2) the defendant's employment status and history and his ability to give bail;
>
> (3) the defendant's family ties and relationships;
>
> (4) the defendant's character, reputation, habits, and mental condition;
>
> (5) the defendant's criminal and juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;
>
> (6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;
>
> (7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;
>
> (8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance; and
>
> (9) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial.

I.C. § 35–33–8–4(b). When applying this statute, we have found the amount of bail to be within the discretion of the trial court. *Mott,* 490 N.E.2d at 1127. "The amount is to be determined by consideration of the circumstances of each case,[ ] and is to be set only in an amount necessary to assure the presence of the accused at an appropriate time and his submission to the authority of the court." *Id.* We will reverse only in the event of an abuse of discretion by the trial court. *Id.*

The trial court stated in response to Samm's evidence and argument presented in support of his motion to reduce bond:

> I don't know what his financial situation is. Certainly we had bonds set at that for someone who has so many drug charges in this court. It's not that it hasn't been done. It's not that he is not a danger to the community and that drugs have been sold at least in five alleged instances, and in light of these circumstances, I'm not treating Mr. Samm any different than other defendants with similar criminal histories, and multiple charges before the [c]ourt.

(Appellant's App. p. 97). In reviewing the record, we note that the trial court received, but did not acknowledge, evidence from which it could have made a determination on several of the factors listed in Indiana Code section 35–33–8–4(b). At the hearing on Samm's motion to reduce bond he presented uncontroverted evidence that: (1) he was forty-five years old and had resided in LaPorte County his entire life; (2) he was currently receiving only disability income from a severe injury

that he had sustained while working; (3) prior to his arrest, he lived with his mother who also lived in the community; (4) he had previously submitted to the authority of Porter County when he was convicted several years previously without any incident indicating his refusal to accept the authority of that court; and (5) he had cooperated with the Michigan City Police Department prior to his arrest, initially while he was awaiting likely charges, and then after he had learned that those charges had been filed. The record shows that, instead of considering this evidence in light of the factors enumerated in Indiana Code section 35–33–8–4(b), the trial court relied primarily upon the number of charges that Samm was facing to determine the amount of bond he would have to pay to await trial outside of jail. It is possible that the trial court's internal calculus took all of the factors into account, but without statements on the record we cannot assume that it did so. Therefore, we conclude that by failing to acknowledge uncontroverted evidence on several of the factors listed in Indiana Code section 35–33–8–4, the trial court abused its discretion.

Despite the trial court's abuse of discretion, we cannot say that the amount of Samm's bond is necessarily excessive. In *Perry v. State,* 541 N.E.2d 913, 919 (Ind. 1989), our supreme court rejected Perry's claim that his $62,000 bond was excessive. Perry was convicted of three Counts of dealing in a schedule II controlled substance, as Class B felonies, and additional charges that he was a habitual offender. *Id.* at 914. As part of Perry's appeal, he contended that the trial court abused its discretion when it denied his motion to reduce bond "because he never had failed to appear in court in the past, he had ties in the community and family members were willing to post bond for him." *Id.* at 919. Considering that the trial court's

proceedings relevant to Perry's motion to reduce bond likely took place more than twenty years ago, the amount of the bond required from Samm is comparable to the $62,000 bond required from Perry. Further, Samm faced more charges than Perry, including a more serious Class A felony charge. Therefore, if the trial court had performed an appropriate evaluation of the evidence presented by Samm in light of the factors in Indiana Code section 35–33–8–4, the trial court may have appropriately come to the conclusion that a $100,000 cash-only bond was required.

### III. *Did the trial court violate Samm's due process rights?*

Finally, Samm contends that the trial court violated his due process rights. However, his entire argument in this section is premised upon his contention that the trial court deviated from its bond schedule when it set his bond. Since we have concluded that the trial court did not deviate from its bond schedule when it set Samm's bond amount, his argument misses the mark. For that matter, Samm was provided an opportunity to move for a bond reduction and given an opportunity to present evidence and argument. Therefore, we fail to see how Samm's due process rights could have been violated by the procedure provided by the trial court.

### CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when it failed to consider the required factors when refusing to reduce Samm's bond amount. However, since that issue is now moot because Samm's bond was reduced and he posted bond and has been released, we will not disturb the proceedings of the trial court.

Remanded.

ROBB, J., concurs.

BAKER, C.J., dissents with separate opinion.

BAKER, Chief Judge, dissenting.

I respectfully dissent from the majority's decision to remand this cause for further proceedings on the issue of whether the trial court abused its discretion in refusing to reduce Samm's $100,000 cash-only bond. Recognizing the long-standing principle that a case is moot when no effective relief can be rendered to the parties before the court, the undisputed evidence in this case established that the trial court reduced Samm's bail from $100,000 cash-only to "10% on a $50,000 bond." Appellee's App. p. 15. Samm bonded out on May 15, 2008, and this appeal focuses only on the original $100,000 bond amount that had been set. *Id.* at 5. Because the amount on which Samm bonded out is no longer the $100,000 cash-only bond that Samm is challenging on appeal, the issue is moot.

Finally, I cannot agree that a discussion of the trial court's alleged abuse of discretion in setting the $100,000 bond amount is warranted under an exception to the mootness doctrine. Granted, questions surrounding bond issues may recur, but it is inconceivable to me in this instance that Samm would necessarily be returned to jail if—as the majority presupposes—the trial court would reject the proposed plea agreement. Because Samm has already been released on the reduced bond amount, there is simply no need to remand for further findings about the propriety of the $100,000 bond that had been originally set. As a result, I would dismiss the appeal.