**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**H. SAMUEL ANSELL**
Ansell Law Firm, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MIGUEL A. LAZCANO,               )
                                 )
    Appellant-Defendant,     )
                                 )
      vs.                  )    No. 49A02-1311-CR-914
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.      )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Peggy Hart, Commissioner
Cause No. 49G20-1309-FA-57360

**March 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Miguel A. Lazcano appeals the trial court's order following a bond reduction hearing. Lazcano presents a single issue for review, namely, whether the court abused its discretion when it reduced his bond to $170,000. We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 29, 2012, Lazcano was arrested and charged with dealing in cocaine, as a Class A felony, and with possession of cocaine, as a Class C felony, after he accepted delivery of a game console that contained a kilogram of cocaine.[1] At the time of the arrest, officers found more than $80,000 in cash in Lazcano's home.[2] The trial court set bail at $500,000 cash bond "per the bond matrix." Appellant's App. at 3.

The local rule for setting a bail bond in criminal cases is Marion County LR49-CR00-108, which recommends a specific amount of bail in accordance with the level of offense charged. Marion County's criminal courts also use a "bail matrix," a worksheet outside the local rules, to calculate the accused's risk-of-flight. The matrix is broken down into seven levels and assigns number values to various relevant factors, such as length of local residence, employment status, prior arrests, criminal history, and the nature of the offense.[3] Appellant's App. at 18. A chart at the bottom of the matrix

---

[1] Lazcano has not included a copy of the charging information or the probable cause affidavit in the record on appeal, nor has he explained the circumstances of his arrest in his brief on appeal. The State described the basis for the charges in its arguments before the court, and on appeal Lazcano does not dispute any of the facts alleged by the State.

[2] The record is in conflict as to whether the officers found $83,000 or $85,000 in cash at Lazcano's home.

[3] The bail matrix is not mentioned in LR49-CR00-108.

contains bail amount recommendations based on the calculated risk level and the level of the offense. The bail matrix recommends bail amounts that can be greater than or less than the amounts recommended in the local rule for each level of offense, depending on the risk factor calculation.

At the initial hearing on September 6, Lazcano moved for a reduction in the amount of his bail. On September 10, the court held a hearing on the motion,[4] and Lazcano testified through an interpreter.[5] He is a resident legal alien, was born in Mexico, and his mother still lives there. He has lived with his wife and fourteen-year-old daughter at his current address in Indianapolis for four years in a home leased from his sister-in-law and has lived in Indianapolis for a total of eight years. At the time of the hearing, he was fifty years old, had lost part of his right hand in a work-related accident in 2007, and was receiving Social Security Disability payments. And he was taking medications for pain due to his amputation, rheumatoid arthritis, and other conditions. On direct examination he denied having any previous arrests, but on cross-examination he conceded that he had been arrested in California in 1983 "for drinking" and in 1994 for "transport of marijuana over 30 grams, which is a felony in California[.]" Transcript at 8. Regarding the drug offense, Lazcano explained that he had not had "the drug with [him]" but admitted that he had served thirty-six months of probation. Id. at 8-9.

There was discussion at the hearing regarding whether Lazcano could be deported during the pendency of the criminal proceedings. His attorney argued that that was not

---

[4] Commissioner Michael S. Jensen presided over the September 10 bond reduction hearing.

[5] Lazcano speaks Spanish and a little English.

the case because Lazcano is a legal resident alien. At the close of the hearing, the trial court ordered that Lazcano's bail be reduced to a $250,000 cash bond. When Lazcano asked the court to order a surety bond instead, the court declined, reasoning that (1) during the hearing Lazcano had lied to the court about his criminal history; (2) part of the sentence for the offense could be non-suspendable;[6] (3) Lazcano had possessed a kilogram of cocaine; and (4) officers had found more than $80,000 cash in Lazcano's home.

On October 8, Lazcano again filed a motion to review his bail, and the court held a hearing on October 16. The trial court noted: "[W]e have a large amount of cocaine here and we have eighty-three thousand dollars." Id. at 29. Before any evidence was admitted, Lazcano argued that the trial court had erred when it had reduced the bail to a $250,000 cash bond because it had based that decision on the erroneous belief that Lazcano could be deported while the criminal proceeding was pending. Lazcano then added that he is in constant pain due to his amputation and is not receiving necessary medication or medical treatment in jail, including a surgical procedure on his stump to address the continued growth of the bone where his hand was amputated. Additionally, Lazcano said his family has the ability to execute a ten percent bond or a real estate bond but cannot afford a cash bond. The State reminded the court that Lazcano had access to "large quantities of cash which make him a flight risk[,]" objected to the reduction of the bail amount, and asked that the bail remain the same. Id. at 25.

---

[6] Under Indiana Code Section 35-50-2-2(b)(1), the court may suspend "only that part of a sentence that is in excess of the minimum sentence" where the crime committed was a Class A felony or Class B felony and the person has a prior unrelated felony conviction.

4

After hearing argument from counsel, the court questioned Lazcano. He testified that he had lived in Indianapolis for eight years, he had lived in California for twenty-four years before that, and his mother still lives in Mexico. The court then stated: "All right, I'll give you some consideration. I'll do a hundred and seventy thousand cash." Id. at 31. Lazcano now appeals.[7]

## DISCUSSION AND DECISION

Lazcano contends that the trial court abused its discretion when it set his bail at $170,000 cash. In particular, he argues that the amount of the bail is unconstitutionally excessive and, therefore, that the trial court abused its discretion when it rejected his request for a ten percent surety bond. We cannot agree.

We have explained the purpose and setting of pre-trial bail and the review of bail bond orders as follows:

> "The amount of bail is within the sound discretion of the trial court and will be reversed only for an abuse of discretion." Perry v. State, 541 N.E.2d 913, 919 (Ind. 1989). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). We will not reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling. Collins v. State, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), trans. denied. "The amount [of bail] is to be determined by consideration of the circumstances of each case and is to be set only in an amount necessary to assure the presence of the accused at an appropriate time and his submission to the authority of that court." Mott v. State, 490 N.E.2d 1125, 1127 (Ind. Ct. App. 1986) (citations omitted).
>
> Indiana's Constitution prohibits excessive bail. Ind. Const. art. I, § 16. As this court has explained:

---

[7] On November 12, 2013, Lazcano filed a motion to shorten deadlines and expedite this appeal, and a motions panel of this court granted that motion on November 21.

> Because an accused is presumed innocent, pre-trial incarceration should not serve punitive purposes. Instead, pre-trial bail allows an accused the opportunity to properly prepare his defense at freedom, while it insures his presence at trial. It necessarily follows that once bail is made available, the amount set shall not be excessive, as this constitutes a denial of that right altogether.

Sherelis v. State, 452 N.E.2d 411, 413 (Ind. Ct. App. 1983). "Bail is excessive where the amount set represents a figure higher than that reasonably calculated to assure the accused party's presence at trial." Id.

The General Assembly has provided a list of relevant facts to be considered in determining a reasonable amount of bail. Specifically, Indiana Code Section 35-33-8-4(b) provides:

> Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court or to assure the physical safety of another person or the community if the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community. In setting and accepting an amount of bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance, including:
>
> (1) the length and character of the defendant's residence in the community;
>
> (2) the defendant's employment status and history and his ability to give bail;
>
> (3) the defendant's family ties and relationships;
>
> (4) the defendant's character, reputation, habits, and mental condition;
>
> (5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;
>
> (6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance; and

(9) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial.

Reeves v. State, 923 N.E.2d 418, 420-21 (Ind. Ct. App. 2010) (alteration in original).

Motions to reduce bail are provided for by Indiana Code Section 35-33-8-5(c), which states: "When the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in [Indiana Code section 35-33-8-4(b)], which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial, the court may reduce bail." In reviewing the trial court's exercise of discretion, we look to the same factors as are relevant to setting the amount of bail. See Sneed v. State, 946 N.E.2d 1255, 1260 (Ind. Ct. App. 2011).

Lazcano contends that the trial court abused its discretion when it required a $170,000 cash bond because that amount is "off the chart." Appellant's brief at 7. The "chart" to which he refers is the bail matrix worksheet. In Marion County, for Class A felonies the bail matrix lists $20,000 as a recommended bail amount for an accused who is calculated to have the lowest risk of failing to appear and $80,000 for someone at the highest risk level. The matrix worksheet does not recommend the type of bond to be

required. The local rule recommends the median amount of $50,000 for a Class A felony and allows for enhancement of the amount if certain circumstances are present.

Lazcano cites a completed bail matrix worksheet included in his appendix as support for his argument that the trial court abused its discretion in ordering a $170,000 cash bond. Lazcano argues that he falls in the lowest risk level and that certain factors, such as the length of his residence in Indiana, his family connections here, and his long-time resident alien status, weigh more heavily than evidence that might factor against him in determining the amount and type of bond.

Regarding the worksheet, it is not clear whether the State, the court, or Lazcano's attorney completed the worksheet. While the worksheet is included in the appendix, the record does not show that it was offered or admitted into evidence at either of Lazcano's bail reduction hearings. Moreover, there is no explanation in the worksheet for why any of the values were assigned at the level they were, and the "prior felony convictions" factor of the computation contains no entry, yet the record shows that Lazcano has a prior felony conviction in California for transporting marijuana. In other words, the worksheet included in Lazcano's appendix has no evidentiary value.

The amount set for Lazcano's bail is indeed greater than the amount recommended on the bail matrix. But bail schedules should be only a starting point for tailoring the bail bond to the individual in each circumstance. Samm v. State, 893 N.E.2d 761, 765 (Ind. Ct. App. 2008). And a bail amount set outside a bail schedule is not presumptively unreasonable. Id. at 766. On appeal, Lazcano argues that the evidence of his family's residence in Indianapolis, his eight-year residence in that city and four-year residence in

8

the house leased from his sister-in-law, his status as a thirty-year resident alien in the United States, his receipt of Social Security Disability payments for an accident suffered at work, and his family's inability to raise $170,000 cash bond favor reduction of the bail amount. He argues further that the "only § 35-33-8-4(b) factor that does not fall in favor of a lower bond is the nature of the charge and the severity of the penalty" he faces. Appellant's Brief at 7. But Lazcano's arguments on appeal are merely requests for this court to reweigh the evidence before the trial court, which we will not do. See Collins, 822 N.E.2d at 218.

The trial court's judgment is supported by the facts and circumstances before the court. On appeal Lazcano ignores his ties to California, where he lived for twenty-four years, and his ties to Mexico, where he was born, where he speaks the native language, and where his mother still lives. Lazcano also ignores the seriousness of the State's allegation against him, his age, the fact that his sentence is non-suspendable and would be at least twenty years, and his apparent access to large amounts of cash.

Again, the setting of a bail bond is within the trial court's discretion. Reeves, 923 N.E.2d at 420. To show an abuse of discretion, Lazcano had to show that the bail amount set represents a figure higher than that reasonably calculated to assure his presence at trial. See Ind. Code § 35-33-8-4(b). But the "inability to procure the amount necessary to make bond does not in and of itself render the amount unreasonable." Sneed v. State, 946 N.E.2d 1255, 1260 (Ind. Ct. App. 2011). Despite the factors that might weigh in favor of Lazcano, numerous factors support the trial court's judgment and, as such, we cannot say that the trial court abused its discretion in requiring a $170,000 cash bond.

Affirmed.

BAKER, J., and CRONE, J., concur.