

FILED

May 05 2020, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William D. Dillon
Dove & Dillon, P.C.
North Vernon, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Yeager,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 5, 2020<br><br>Court of Appeals Case No.<br>20A-CR-121<br><br>Appeal from the<br>Jefferson Circuit Court<br><br>The Honorable<br>Donald J. Mote, Judge<br><br>Trial Court Cause No.<br>39C01-1911-F3-1322 |

**Vaidik, Judge.**

# Case Summary

[1]     The State charged John Yeager with four Level 3 felony offenses, alleging that he battered the two-year-old son of his girlfriend.  After the trial court set bail at $250,000 cash only, Yeager filed a motion to reduce his bail.  Although the

pretrial director recommended that Yeager be released to pretrial supervision with the added condition of electronic monitoring and Yeager presented evidence that he had no criminal history besides underage drinking, lived in the area his whole life, lived in the same house (which he was buying) for twelve years, had a job to which he could return, and had a good relationship with his family (who also lived in the area and was supportive of him), the court denied his motion. Yeager now appeals.

[2] Because Yeager presented evidence of substantial mitigating factors showing that he recognizes the court's authority to bring him to trial and there is no evidence that Yeager poses a risk to the physical safety of the victim or the community, we find that the trial court abused its discretion in denying Yeager's motion to reduce his $250,000 cash-only bail. We therefore reverse the trial court and remand with instructions that Yeager be released to pretrial supervision with the added condition of electronic monitoring.

# Facts and Procedural History

[3] On November 14, 2019, the State charged Yeager with Level 3 felony aggravated battery, Level 3 felony battery on a child less than fourteen years old, Level 3 felony domestic battery, and Level 3 felony neglect of a dependent, accusing him of battering J.G., the two-year-old son of his girlfriend. The trial court issued a warrant for Yeager's arrest and ordered that he be held without bail until his initial hearing.

[4] The initial hearing was held on November 18. According to the Jefferson County Pretrial Assessment Report filed that day, Yeager's Indiana Risk Assessment Score (IRAS) was "0 (Low)." Appellant's App. Vol. II p. 40. The Jefferson County Pretrial Director recommended that Yeager "be released to pretrial supervision with the added condition of electronic monitoring." *Id.* The trial court, however, set Yeager's bail at "$250,000 cash only." *Id.* at 55. The court also issued a no-contact order for J.G. *Id.* at 48-49.

[5] The next day, Yeager filed a motion to reduce his bail. At the bail-reduction hearing held on December 30, Yeager, who was thirty-five years old, testified that he had lived in Jefferson County and neighboring Jennings County his "entire life" and that he had lived in the same house in Madison (Jefferson County) for twelve or thirteen years. Tr. p. 10. Yeager said he was buying the house. Yeager said he had a good relationship with his parents, who were married and lived in Jennings County, and his sister (his only sibling), who was living in his house while he was incarcerated. In addition, Yeager testified that he worked at McCubbin Motors in Madison before he was arrested and that his job was still available for him if he was released on bail. Yeager said the only other time he had been in trouble with the law was for underage drinking when he was twenty years old. According to Yeager, he never missed a court hearing and paid a fine. Yeager agreed with the issuance of the no-contact order and said there was no reason for him to have contact with J.G. or his family. Yeager told the court that he would like to be released on bail so he could work to pay for his defense counsel and hire an expert. Yeager said if the court

ordered him to be on electronic monitoring, he could pay that cost. Finally, Yeager's mother testified that she and her husband would make sure that Yeager attended his court hearings. The State did not dispute any of this evidence. Instead, the State presented photographs of the injuries to J.G., evidence that medical staff believed J.G.'s injuries were non-accidental, and evidence that J.G. was in Yeager's care at the time of his injuries.

[6] The trial court denied Yeager's motion to reduce his bail because (1) the nature and gravity of the alleged offenses was "serious," and Yeager faced a sentence up to thirty-two years[1] and (2) it was not "confident public safety c[ould] be reasonably assured if [Yeager's] bail were to be reduced." Appellant's App. Vol. II pp. 100-01.

[7] Yeager now appeals.

# Discussion and Decision

[8] Yeager appeals the trial court's denial of his motion to reduce bail. The amount and manner of executing bail is a matter within the sound discretion of the trial court and is reviewed only for an abuse of that discretion. *Perry v. State,* 541 N.E.2d 913, 919 (Ind. 1989); *Sneed v. State*, 946 N.E.2d 1255, 1260 (Ind. Ct.

---

[1] The trial court arrived at thirty-two years by running the sentences consecutively. In doing so, the court did not take into account "double jeopardy concerns under *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)." Appellant's App. Vol. II p. 100. We believe that there may be double-jeopardy considerations at play and therefore have doubts that Yeager's maximum sentence is thirty-two years.

App. 2011).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Sneed*, 946 N.E.2d at 1257.

[9] Yeager argues that "the bail as set was excessive.  The trial court's decision refusing to lower it and fashion a reasonable method for posting was an abuse of discretion."  Appellant's Br. p. 12.  The Indiana Constitution prohibits excessive bail.  Ind. Const. art. 1, § 16.  "A decision upon the question of excessiveness must be based upon two basic and related considerations: (1) The object of bail itself, and (2) the financial ability of the accused to provide the required amount of bail."  *Samm v. State*, 893 N.E.2d 761, 766 (Ind. Ct. App. 2008) (quotation omitted).  "The object of bail is not to effect punishment in advance of conviction."  *Id.*  "Rather, it is to ensure the presence of the accused when required without the hardship of incarceration before guilt has been proved and while the presumption of innocence is to be given effect."  *Id.*

[10] Indiana Code section 35-33-8-5 governs the modification of bail and provides in part:

> (a) Upon a showing of good cause, the state or the defendant may be granted an alteration or revocation of bail by application to the court before which the proceeding is pending. . . .
>
> * * * * *
>
> (c) When the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in [Indiana Code section 35-33-8-4(b)], which reasonably suggests

that the defendant recognizes the court's authority to bring the defendant to trial, the court may reduce bail. However, the court may not reduce bail if the court finds by clear and convincing evidence that the factors described in IC 35-40-6-6(1)(A) and IC 35-40-6-6(1)(B) exist or that the defendant otherwise poses a risk to the physical safety of another person or the community.

Section 35-33-8-4(b) sets forth these factors:

(1) the length and character of the defendant's residence in the community;

(2) the defendant's employment status and history and the defendant's ability to give bail;

(3) the defendant's family ties and relationships;

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring the defendant to trial;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;

(9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring the defendant to trial.

[11] Here, Yeager presented evidence of substantial mitigating factors showing that he "recognizes the court's authority to bring [him] to trial," as required by Section 35-33-8-5(c). Yeager has no criminal history besides underage drinking and has never failed to appear at a court proceeding. In addition, Yeager has lived in the Jefferson County/Jennings County area his entire life and in the same house for twelve years. Yeager had a steady job to which he could return and was paying for his house. Yeager's family also lives in the same area and is supportive of him. Although Yeager faces four Level 3 felony charges for allegedly battering a two-year-old (and a potentially lengthy sentence if he is convicted), this does not mean that Yeager presents a risk of not appearing. Indeed, the Jefferson County Pretrial Director found no risk.

[12] As for the trial court's finding that Yeager poses a risk to the physical safety of J.G. and the community, Yeager claims that the fact that he "has merely been accused, cannot constitute clear and convincing evidence that he is a danger to the alleged victim or the community." Appellant's Reply Br. p. 7. We agree.

As Yeager points out, besides the accusations themselves, no evidence was presented "as to how he could possibly constitute a threat to anyone." *Id.* The only evidence the State cites in its brief to show that Yeager is a danger to J.G. and the community is J.G.'s injuries. *See* Appellee's Br. p. 11. But this violates the presumption of innocence to which Yeager is entitled. *See Samm*, 893 N.E.2d at 766. Again, the Jefferson County Pretrial Director recommended that Yeager be released to pretrial supervision with the added condition of electronic monitoring. Without any evidence to show that Yeager is a danger, we conclude that the trial court abused its discretion in denying Yeager's motion to reduce his $250,000 cash-only bond. We therefore reverse the trial court and remand with instructions that Yeager be released to pretrial supervision with the added condition of electronic monitoring. *See* Ind. Code § 35-33-8-11(a). The no-contact order shall remain in place. *See* Ind. Code § 35-33-8.3.6.

[13] We note this result is consistent with the new evidence-based risk-assessment system that Indiana has adopted. Effective January 1, 2020, Indiana Criminal Rule 26(A) and (B) provides:

> (A) If an arrestee does not present a substantial risk of flight or danger to themselves or others, **the court should release the arrestee without money bail or surety subject to such restrictions and conditions as determined by the court** except when:
>
> > (1) The arrestee is charged with murder or treason.

> (2) The arrestee is on pre-trial release not related to the incident that is the basis for the present arrest.

> (3) The arrestee is on probation, parole or other community supervision.

> (B) In determining whether an arrestee presents a substantial risk of flight or danger to self or other persons or to the public, the court should utilize the results of an evidence-based risk assessment approved by the Indiana Office of Court Services, and such other information as the court finds relevant. The court is not required to administer an assessment prior to releasing an arrestee if administering the assessment will delay the arrestee's release.[2]

(Emphasis added). *See also* Ind. Code §§ 35-33-8-3.8, 0.5. According to the executive director of the Indiana Office of Court Services, which oversaw the development of the new evidence-based risk-assessment system, "Under Criminal Rule 26, counties will use the IRAS Pretrial Assessment Tool to assess risk of failure during the pretrial period." Mary Kay Hudson, *Smart on Crime: Stakeholders Attend Pretrial Summit*, Indiana Court Times, Dec. 20, 2019, http://indianacourts.us/times/2019/12/smart-on-crime-stakeholders-attend-pretrial-summit/[https://perma.cc/36L8-24JC]. The purpose of this new system is "maximizing public safety, maximizing court appearance, and maximizing pretrial release." Ind. Office of Court Servs., *About*,

---

[2] Indiana Criminal Rule 26(A) and (B) went into effect in 2016 for eleven counties that were selected to pilot the pretrial services program. Jefferson County was one of these counties.

https://www.in.gov/judiciary/iocs/3900.htm [https://perma.cc/BP54-DQRA].

[14] Notwithstanding Indiana Appellate Rule 65(E), this opinion is effective immediately, and the trial court need not await a certification of this opinion by the Clerk of Courts before releasing Yeager to pretrial supervision with the added condition of electronic monitoring. *See* Ind. Appellate Rule 1 ("The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules."); *see also Town of Ellettsville v. Despirito*, 87 N.E.3d 9, 12 (Ind. 2017) (making opinion effective immediately notwithstanding Appellate Rule 65).

[15] Reversed and remanded.

May, J., and Robb, J., concur.