## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2020, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher M. Kunz
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Farrah Dwyer, *Appellant-Defendant,* | September 30, 2020 |
| v. | Court of Appeals Case No. 20A-CR-703 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Sheila A. Carlisle, Judge |
| | The Honorable Stanley E. Kroh, Magistrate |
| | Trial Court Cause No. 49G03-2002-F1-5734 |

**Bailey, Judge.**

# Case Summary

[1] Farrah Dwyer ("Dwyer") appeals the trial court's denial of her motion to lower the amount of her bail bond. The only issue she raises on appeal is whether that denial was an abuse of the court's discretion.

[2] We affirm.

# Facts and Procedural History

[3] On February 10, 2020, the State charged Dwyer with one count of neglect of a dependent resulting in death, as a Level 1 felony.[1] The information and probable cause affidavits alleged that, on May 18, 2019, Dwyer drove her SUV with her infant child in the third row of the vehicle to 1023 North Ewing Street. Dwyer's child remained in the car while Dwyer spent several hours in 1023 North Ewing Street. Dwyer then went to pick up a friend and drove him to an Auto Zone at 3863 East Washington Street. Upon arriving, Dwyer checked on her child in the third row of the vehicle and found the child unresponsive. The child was transported to Riley Hospital where she was pronounced deceased and recorded as having a temperature of 105 degrees.

[4] The State did not charge Dwyer until February 10, 2020, at which time a warrant was issued for Dwyer's arrest and bail bond was set at $100,000 surety.

---

[1] Ind. Code § 35-46-1-4(a)(1), (b)(3).

On February 14, Dwyer was arrested and appeared at an initial hearing. Dwyer testified that she earned only $540.00[2] per week from employment and could not afford to pay the $100,000 bond. Dwyer was appointed counsel and subsequently requested that the court issue an order reducing her bail bond or setting the matter for a hearing.

On March 6, 2020, the trial court held a hearing on Dwyer's motion to reduce the bail bond. At the hearing, Dwyer testified that she is thirty-one years old and has four children, three of whom live with their father; the fourth child was placed with the Indiana Department of Child Services ("DCS"). Dwyer was enrolled in a four-month treatment program for drug abuse at Seeds of Hope in Marion County before leaving the program to move in with her sister in Marion County two weeks prior to her arrest. Through her involvement with DCS, Dwyer regularly submitted to drug screens which were all negative in the three months prior to her arrest.

Dwyer testified that, on February 14, 2020, she went to the Marion County City-County Building for a meeting with a detective. It was Dwyer's understanding that she was meeting the detective to "close the case" relating to her child's death, although she had thought it had already been closed. Tr. at 12. As she was exiting her vehicle to meet with the detective, Dwyer was speaking to the detective on her cell phone and asked him whether there was a

---

[2] The parties agree that the reference in the transcript to "$5.40 a week" is a mistake and that Dwyer actually testified that she made $540.00 per week. Tr. at 4.

warrant for her arrest. The detective informed Dwyer that there was such a warrant. Dwyer proceeded to meet with the detective and was arrested.

[7] The record in Dwyer's case includes a February 10, 2020, printout from the Indiana Criminal Crossmatch system showing that Dwyer has prior convictions for public intoxication, as a Class B misdemeanor, and operating a motor vehicle without ever receiving a license, as a Class C misdemeanor. Dwyer had three separate instances of failing to appear for court dates during the public intoxication case. She also had three other criminal cases in which the charges were dismissed; in two of those cases, Dwyer failed to appear for court dates.

[8] The trial court denied Dwyer's motion to reduce her bail bond. In doing so, the trial court stated:

> [R]eviewing the file and considering our local rule about bail, our starting point for a Level 1 felony is $50,000 surety. Due to the nature of the allegations, the Court believes -- finds today, after considering the evidence and argument that the bail set by the presiding judge is the appropriate bail in this case, so the Court finds the bail should remain at $100,000 surety.

Tr. at 15.

[9] The Marion County Superior Court Bail Schedule sets the presumptive bail bond amount for "major" felonies. https://citybase-cms-prod.s3.amazonaws.com/9cc53daf53d245b8ba2cca88b3e54d2c.pdf [https://perma.cc/54SG-966H]. The schedule provides that bail for a Level 1 felony is $50,000 surety. *Id.* The schedule further provides that bail amounts

"shall" be enhanced by double in certain enumerated circumstances, including where "[t]he crime alleged involves … serious bodily injury[,]" or where "[t]he defendant has two or more failures to appear." *Id.*

[10] Dwyer now appeals.

# Discussion and Decision

[11] Dwyer challenges the trial court's denial of her request to lower the amount of her bail bond. The Indiana Constitution prohibits excessive bail. Ind. Const. art. 1, § 16. Otherwise, the amount of a bail bond is within the sound discretion of the trial court. *E.g.*, *Sneed v. State*, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011) (citing *Perry v. State*, 541 N.E.2d 913, 919 (Ind. 1989)). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* On appeal, we will not "reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling." *Reeves v. State*, 923 N.E.2d 418, 420 (Ind. Ct. App. 2010), *trans. denied.* "The amount of bail is to be determined by consideration of the circumstances of each case and is to be set only in an amount necessary to assure the presence of the accused at an appropriate time and his submission to the authority of th[e] court." *Id.* (quotation and citation omitted).

[12] Under Indiana Code section 35-33-8-5(a), a defendant may be granted an alteration or revocation of bail upon a showing of "good cause." To make such a showing, the defendant must present the trial court with "additional evidence

of substantial mitigating factors, based on the factors set forth in section [35-33-8-]4(b) …, which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial." I.C. § 35-33-8-5(a), (c). In setting the amount of a bail bond, the trial court must

> take into account all facts relevant to the risk of nonappearance, including:
>
> (1) the length and character of the defendant's residence in the community;
>
> (2) the defendant's employment status and history and the defendant's ability to give bail;
>
> (3) the defendant's family ties and relationships;
>
> (4) the defendant's character, reputation, habits, and mental condition;
>
> (5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring the defendant to trial;
>
> (6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;
>
> (7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;

(9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring the defendant to trial.

I.C. § 35-33-8-4(b). In addition to those factors, a court may consider a local bail schedule which "can be presumed to set a reasonable amount to assure the presence in court of the accused." *Mott v. State*, 490 N.E.2d 1125, 1127 (Ind. Ct. App. 1986) (citing *Hobbs v. Lindsey*, 240 Ind. 74, 162 N.E.2d 85 (1959)). That is, bond set pursuant to a local bail bond schedule is presumptively not excessive, *id.*, although such a presumption may be rebutted by a defendant's showing that the bail is excessive under an analysis of the relevant statutory factors, *see Samm v. State*, 893 N.E.2d 761, 766 (Ind. Ct. App. 2008).

[13] Here, the trial court considered the Marion County Bail Schedule as the presumptively appropriate bail amount when it noted that bail for a Level 1 felony is typically $50,000. https://citybase-cms-prod.s3.amazonaws.com/9cc53daf53d245b8ba2cca88b3e54d2c.pdf [https://perma.cc/54SG-966H]. The court followed the bail schedule further by taking into consideration that the nature of Dwyer's alleged offense involved serious bodily injury (i.e., death), thus making it appropriate under the bail

schedule to double the starting amount of bail. *Id.* In addition, the trial court was aware of Dwyer's history of failing to appear for court five times in the past, which is another basis to double the amount of bail under the bail schedule. *Id.* Thus, Dwyer's $100,000 bail bond is presumptively appropriate.

[14] Dwyer failed to provide evidence of relevant statutory factors rebutting that presumption. Dwyer's multiple past failures to appear for court are strong evidence that she has disdain for authority and might not recognize and adhere to the authority of the court to bring her to trial. I.C. § 35-33-8-4(b)(6). Furthermore, the nature and gravity of the alleged offense are severe, and the potential penalty faced is a lengthy prison sentence, which increases the risk of failure to appear before the court.[3] *See Sneed*, 946 N.E.2d. at 1258-59.

[15] While Dwyer testified that she did not make enough money from her employment at the time of her arrest to pay her bond, the inability to procure the amount necessary to make bond does not in and of itself render the amount excessive. *Mott*, 490 N.E.2d at 1128. In addition, Dwyer's testimony that she had lived in Marion County for at least four and a half months prior to her arrest does not show lengthy residence in the community, as Dwyer suggests. And, while Dwyer does have family—including four children who do not live

---

[3] *Yeager v. State*, 148 N.E.3d 1025, 1030 (Ind. Ct. App. 2020), *trans. pending*, is not to the contrary as the parties appear to believe. *Yeager* did not make the blanket statement that "the charges a defendant faces do[] not indicate that the defendant presents a risk of flight," as the State claims and contends conflicts with precedent. Appellee's Br. at 12. Rather, in *Yeager* this court held that Yeager's charges and potentially lengthy sentence—which were the only statutory factor weighing against him—did not *alone* "mean that Yeager present[ed] a risk of not appearing." 148 N.E.3d at 1028.

with her—in Marion County, that fact does not, *as a matter of law*, outweigh the other relevant statutory factors. *See Reeves*, 923 N.E.2d at 420 (noting we will not reweigh the evidence on appeal, and we consider any conflicting evidence in favor of the trial court's ruling). Moreover, the fact that Dwyer agreed to meet with the detective does not necessarily show a willingness to cooperate with authority, as Dwyer claims; her own testimony establishes that she met with the detective only because she thought it was necessary to close the case regarding her child's death. The bail amount was not excessive under the applicable statutory factors.

[16] Dwyer asserts that the trial court erroneously failed to consider all relevant statutory factors because it did not state which factors it relied upon. However, the court was silent regarding its reasons for the amount of bail other than to note that it aligned with the local bail schedule; i.e., $50,000 was the "starting point for a Level 1 felony," and the "nature of the allegations" (i.e., neglect of a dependent resulting in death) made double that amount the "appropriate bail." Tr. at 15. As this court noted in *Sneed v. State*, there is nothing in the bail statutes that requires a court to state its reasons for the amount of bail. 946 N.E.2d at 1259 ("Indiana Code sections 35-33-8-4 and 35-33-8-5 require the trial court to consider the relevant factors but do not by their terms require the trial court to explain its reasoning for setting or failing to reduce bail."). And, as in *Sneed*, we do not take the court's silence as to the statutory factors to mean the court ignored the relevant circumstances; rather, we presume the trial court knew and followed the law. *Id*. Moreover, "a statement of the trial court's

reasons for not reducing bail has less importance" where, as here, "the bail initially set is not prima facie excessive." *Id*.

# Conclusion

Dwyer's bail bond amount, which is in accord with the local bail schedule and is supported by evidence of statutory factors contained in Indiana Code Section 35-33-8-4(b), was not excessive. The trial court did not abuse its discretion when it denied Dwyer's request to lower the amount of her bail bond.

Affirmed.

Vaidik, J., and Weissmann, J., concur.