## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2020, 11:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael C. Cunningham
Judson G. McMillin
Brookville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffery C. Moore,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 30, 2020

Court of Appeals Case No.
20A-CR-1339

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-2006-F2-11

**Tavitas, Judge.**

# Case Summary

In this interlocutory appeal, Jeffery Moore appeals from the trial court's second bond order. We affirm.

# Issues

Moore raises four issues, which we consolidate and restate as follows:

      I.      Whether Moore was denied a prompt initial hearing.

      II.     Whether the trial court abused its discretion in denying Moore's motion for a bond reduction.

# Facts

During the relevant period, Moore and his wife, Rhonda, resided in Aurora, Indiana. In January 2020, a confidential informant ("CI") told the Dearborn County Sheriff's Department that Moore had a significant marijuana growing operation and also sold marijuana and paraphernalia. On March 19, 2020, detectives gave the CI $175.00 to purchase marijuana from Moore. The CI emerged from Moore's residence with over one ounce of marijuana. Moore facilitated, but was not present for the transaction, which Rhonda conducted. On June 24, 2020, the CI purchased over twenty-eight grams of marijuana from

Moore for $200.00. Law enforcement officers[1] recorded audio of discussions from both controlled buys.

[4] On June 24, 2020, Detective Carl Pieczonka of the Dearborn County Sheriff's Office obtained a search warrant for Moore's residence. On June 25, 2020, law enforcement officers executed the search warrant. Considerable evidence of drug activity was seized,[2] as well as "20 to 30 guns[,]" many of which were loaded, and a significant amount of cash, silver bars, and silver coins. Tr. Vol. II p. 9. Moore was placed under arrest.

[5] On Friday, June 26, 2020, the State filed its initial probable cause affidavit, and the trial court found probable cause for Moore's arrest. On Monday, June 29, 2020, Detective Pieczonka filed an amended probable cause affidavit. That same day, the State charged Moore and Rhonda with two counts of dealing in a Schedule I controlled substance, Level 2 felonies; dealing in marijuana and corrupt business influence, Level 5 felonies; possession of a narcotic drug, a

---

[1] Detective Pieczonka was assisted by Sheriff Shane McHenry and Detective T.J. Pendergast of the Dearborn County Sheriff's Office and the Dearborn County Special Crimes Unit.

[2] Evidence seized from Moore's basement, kitchen, attached garage, detached garage, and bedroom filled the investigators' small U-Haul truck "from top to bottom" and included: (1) over sixty grams of THC butter, which is "typically used in the manufacture of [ ] making edibles, brownies, cookies, chocolate, [and] candies"; (2) a "marijuana grow operation" with lights and ventilation; (3) in excess of ten pounds of marijuana; (4) "15 to 20 quart sized mason jars . . . that contained [multiple, labeled strains of] marijuana"; (5) manufactured edibles; (6) "multiple individually packaged" baked goods, candies, and confections suspected to have been manufactured with THC butter; (7) "parchment paper with substance wrapped up inside [ ] Land O' Lakes packages [and] items that were . . . believe[d] to contain THC"; (8) "four large boxes approximately the size [of a] Christmas tree" containing marijuana; (9) over ninety grams of "Club 13 Kratom[,]" containing over twenty-eight grams of mitragynine, "a schedule [I] controlled substance that has the effects of opiates"; (10) twenty to thirty guns; (11) multiple cell phones containing text messages regarding sales of marijuana, butter, and/or edibles; and (12) approximately $11,000.00 in cash, as well as silver bars and coins. Tr. Vol. II pp. 20-21, 23-24, 28-30; Moore's App. Vol. II p. 24.

Level 3 felony; two counts of possession of marijuana, Level 6 felonies, and one count of maintaining common nuisance, a Level 6 felony.

[6] An arrest warrant was issued and served on Moore on June 30, 2020. Also, that day, the trial court conducted Moore's initial hearing and set Moore's bond at $100,000.00 cash only and $75,000.00 surety only ("initial bond order"). The trial court's initial hearing order provided, in part, as follows:

> [b]ail is basesd [sic] upon [Moore]'s threat to public safety due to the testimony by Detective Pieczonka that 20-30 guns including assault rifles, a small u-haul of drug dealing evidence including Kraton [sic], and approximately $26,000 seized, a prior felony conviction for a similar criminal offense,[3] [and] the risk of flight based upon the potential penalties of 10-30 years on each level 2 felony.

Moore's App. Vol. II p. 34.

[7] On July 13, 2020, Moore filed a motion for bond reduction. The trial court conducted a hearing thereon on July 15, 2020. In addition to the foregoing facts, Detective Pieczonka testified that, based on his training and experience, large quantities of cash are often found near drug operations like that discovered on Moore's property; and that the seized drug operation appeared to have been running for several years. Next, Detective Tom McKay of the Dearborn County Special Crimes Unit testified that, although Moore's tax

---

[3] The State's charging information alleged that, in 1989, Moore was convicted of possession of marijuana, a Class D felony.

documents from 2015 through 2018 revealed reported total joint marital income "for the four years . . . in the neighborhood of $160,000[,]" the State seized or froze assets from Moore "in the neighborhood of million dollars[.]" *See* Tr. Vol. II pp. 41-43, 48-49. Detective McKay testified that assets were seized or frozen "pending the filing of a forfeiture complaint . . . because there are assets there that [ ] could quite possibly be the product of illegal activities[.]" *Id*. at 44, 45. Detective McKay's testimony also included this exchange:

> Q: [ ] Now you haven't sought to seize [Moore's] house . . . ?
>
> A: No.
>
> Q: That would be permitted under the statute; would it not?
>
> A: I believe it would.
>
> Q: And the account where [Moore's] social security was coming in, was that seized?
>
> A: We did not seize that.

*Id*. at 48-49.

[8]  Also, Moore testified that he was laid off in 2015, occasionally worked part-time thereafter, and subsequently began to collect Social Security. Moore testified further that he owned his home free and clear of any encumbrances, owed no debts, and that his tax returns since 2015 did not fully reflect his income. Lastly, Moore testified that he did not know the value of his home.

In closing arguments, defense counsel argued that Moore's initial hearing was not promptly held; Moore was being effectively held without bail; and Moore's bail was unreasonably high given his nominal criminal history, longtime residency in the county, and the seizure of Moore's assets. The State countered that Moore received a judicial determination of probable cause within forty-eight hours and that substantial bail was necessary due to: (1) "[a] large and lucrative [drug operation] . . . going on since at least 2016"; (2) the significant number of guns recovered from Moore's residence; and (3) Moore's unencumbered house and admitted lack of other debts. Tr. Vol. II pp. 73, 74; *see also id*. at 74 (State's closing remarks that "[w]ho knows whether all the cash and assets have been located and what [Moore] might do with them?").

On July 15, 2020, the trial court modified Moore's bond to $75,000.00 cash and $75,000.00 surety and ordered Moore to be placed on pretrial home detention upon posting bond ("second bond order"). The second bond order provided in part as follows:

> . . . [T] he State has prove[d] by clear and convincing evidence that Moore poses significant risk to the physical safety of the Dearborn County community at large and that Moore is a significant risk to not appear at future hearings based upon the totality of the evidence. In particular the evidence submitted is that Moore is a convicted felon, a text on his cellphone for a drug deal as far back as 2016, a large scale drug enterprise for at least four years including over $1 million dollars in seized funds, a recent audio taped drug deal, pounds of drugs of numerous forms, Kratom[,] over 20 guns, multiple cellphones beyond the two on Moore and his wife, and an ambulance vehicle completely filled with drug evidence. A drug dealing operation

of this magnitude is a threat to the safety of the children and all citizens of Dearborn County, Indiana. The potential penalties faced, the financial resources of over $1,000,000 of seized cash alone, and the large quantity of firearms create a high[ ]risk of nonappearance at future court hearings. The evidence submitted to the court through hours of testimony at the second bail hearing by Detectives Pieczonka and McKay and the admitted exhibits, demonstrate a large, well organized, drug dealing enterprise that has existed in this community for at least four (4) years.

Moore's App. Vol. II p. 79. On July 17, 2020, Moore filed a notice of appeal.

On August 7, 2020, the parties filed a joint motion for bond reduction in which they agreed that Moore: (1) would be released on his own recognizance without posting bond; and (2) would remain on in-home detention, subject to GPS monitoring, a curfew, and drug screens. Moore subsequently sought leave to stay his appeal, which this Court granted. After a hearing, the trial court found no significant factual or legal basis existed for changing its prior ruling on bond and, therefore, denied the joint motion for bond reduction ("third bond order"). Moore now appeals.[4]

---

[4] On August 13, 2020, Moore filed a supplemental notice of appeal. Moore also sought to consolidate his appeals from the trial court's second and third orders on bond, and to expedite the appeal, which this Court granted.

# Analysis

## *I.    Initial Hearing*

Moore alleges his due process rights were violated by the failure to promptly bring him before the trial court for an initial hearing within forty-eight hours of his arrest.  Moore, however, confuses the timing requirements of probable cause determinations with the timing requirements of an initial hearing.

Indiana Code Section 35-33-7-1(a) provides that a person who "is arrested without a warrant for a crime shall be taken promptly before a judicial officer: . . . in the county in which the arrest is made; or . . . of any county believed to have venue over the offense committed; for an initial hearing in court." "During the initial hearing, the trial court is required to inform the accused of the nature of the charges against him, the amount and conditions of bail, his right to a speedy trial, the privilege against self-incrimination, and his right to retained or appointed counsel."  Anthony v. State, 540 N.E.2d 602, 604 (Ind. 1989); *see* Ind. Code § 35-33-7-5.  The right to bail does not vest until the initial hearing takes place.  *Schmidt v. State*, 746 N.E.2d 369, 373 (Ind. Ct. App. 2001). "[T]he term 'promptly' is not defined in the statutory provisions and there is no certainty concerning the meaning of the term."  16A William Andrew Kerr INDIANA PRACTICE, Criminal Procedure--Trial § 10.3 (2020).

Moore cites *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661 (1991), for the proposition that "promptly" means within forty-eight hours. Moore mischaracterizes the *County of Riverside* holding.  In that case, the county

routinely combined probable cause determinations and initial hearings in a single proceeding. The United States Supreme Court held that conducting probable cause determinations and initial hearings jointly was permissible, *but* that such combined proceedings must be conducted within forty-eight hours of arrest. *County of Riverside* is factually distinct from the instant facts, which do not involve such a joint proceeding. *County of Riverside* does not mandate a forty-eight-hour requirement for the conduct of initial hearings.

[15] Much more pertinent is the United States Supreme Court's holding in *Gerstein v. Pugh,* 420 U.S. 103, 114 (1975). *Gerstein* held that principles of due process entitle an individual detained following a warrantless arrest to a prompt judicial determination of probable cause as a prerequisite to any further restraint on his liberty. 420 U.S. at 114. More recently, our Supreme Court found that "a jurisdiction that provides judicial determinations of *probable cause* within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. . . ." *See Stafford v. State*, 890 N.E.2d 744, 752 n.9 (Ind. Ct. App. 2008) (quoting *Griffith v. State,* 788 N.E.2d 835, 840 (Ind. 2003)) (emphasis added). Accordingly, although probable cause determinations are required within forty-eight hours of arrest, there is no such requirement for initial hearings. Rather, initial hearings must merely be held "promptly."

[16] The record here reveals that Moore was arrested on Thursday, June 25, 2020. The next day—Friday, June 26, 2020—the trial court found probable cause existed to support Moore's arrest. *See* Moore's App. Vol. II p. 20. Moore, thus, received a judicial determination of probable cause within forty-eight hours of

his arrest, which our Supreme Court has found to satisfy the promptness requirement. *See Griffith*, 788 N.E.2d at 840. Following the probable cause determination, the State filed charges against Moore on Monday, June 29, 2020. The next day—Tuesday, June 30, 2020—the trial court conducted Moore's initial hearing. The period between Moore's arrest and the trial court's initial hearing consisted of five days and included an intervening two-day weekend. Thus, the trial court was open, at most, two days between Moore's Thursday arrest and his Tuesday initial hearing. Based on the foregoing, we decline to find that the delay between Moore's arrest and his initial hearing was unreasonable. *See, e.g., Anthony,* 540 N.E.2d at 605 (finding eighteen-day delay between Anthony's arrest and initial hearing may have been unduly long, but still did not amount, under the circumstances, to reversible error).

[17] Moreover, it is well-settled that a person who alleges the denial of a prompt initial hearing must also make a showing of prejudice therefrom. *See Stafford*, 890 N.E.2d at 749 (citing *Anthony,* 540 N.E.2d at 605) (holding that defendant bears the burden to prove the alleged delay was unreasonable *and* that defendant was prejudiced thereby)). Moore does not assert—nor does the record support the finding—that Moore was prejudiced by the delay. *See Anthony,* 540 N.E.2d at 605 (finding no reversible error where Anthony's only claim was that the delay was too long and his cause should be dismissed and where "[Anthony made] no claim or showing that he was not represented by counsel, that he was unaware of the charges against him and his right to respond to them, nor that his preparation of a defense was impeded in any

way"). Moore has failed to carry his burden to prove he was denied a prompt initial hearing; thus, his claim fails.

## II. Bond Reduction

### A. Excessive Bond

[18] Next, Moore argues that the trial court's second bond order constituted an abuse of discretion. Specifically, Moore argues that the trial court: (1) set an excessive bond, given the State's seizure of Moore's assets; (2) imposed stringent additional requirements; and (3) failed to consider Indiana Code Section 35-33-8-4(b) factors and Moore's proffered mitigating factors.

[19] The amount of bond is within the discretion of the trial court and will be reversed on appeal only for an abuse of that discretion. *Lopez v. State,* 985 N.E.2d 358, 360 (Ind. Ct. App. 2013). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Sneed v. State,* 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011). Generally, bond is considered excessive if it is set at an amount higher than reasonably calculated to ensure the accused's presence in court. *Lopez,* 985 N.E.2d at 360.

[20] The Indiana Constitution prohibits excessive bail. Ind. Const. art. 1, § 16. "A decision upon the question of excessiveness must be based upon two basic and related considerations: (1) the object of bail itself, and (2) the financial ability of the accused to provide the required amount of bail." *Samm v. State*, 893 N.E.2d 761, 766 (Ind. Ct. App. 2008) (quotation omitted). "The object of bail is not to

effect punishment in advance of conviction." *Id.* "Rather, it is to ensure the presence of the accused when required without the hardship of incarceration before guilt has been proved and while the presumption of innocence is to be given effect." *Id.*

[21] Indiana Code Section 35-33-8-5, which grants defendants the opportunity to seek alteration of bond, provides in part as follows:

> When the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in [Indiana Code Section 35-33-8-]4(b) of this chapter, which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial, *the court may reduce bail*. However, the court may not reduce bail if the court finds by clear and convincing evidence that the factors described in IC 35-40-6-6(1)(A) and IC 35-40-6-6(1)(B)[5] exist or that the defendant otherwise poses a risk to the physical safety of another person or the community.

Ind. Code § 35-33-8-5(c) (emphasis added). In setting the amount of bond, the trial court is required to consider all facts relevant to the risk of a defendant's failure to appear, including the following Indiana Code Section 35-33-8-4(b) factors:

> (1) the length and character of the defendant's residence in the community;

---

[5] Neither Indiana Code Section 35-40-6-6(1)(A) nor Indiana Code Section 35-40-6-6(1)(B) is applicable here.

(2) the defendant's employment status and history and his ability to give bail;

(3) the defendant's family ties and relationships;

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record . . . ;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;

(9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial.

[22] We initially note Moore's heavy reliance upon *Lopez* and *Yeager v. State*, 148 N.E.3d 1025 (Ind. Ct. App. 2020). Moore's reliance on these cases is misplaced. In *Lopez*, the trial court set bond at $3,000,000.00 and $250,000.00

in cash and denied Lopez's motion for bond reduction. On appeal, this Court found the bond to be excessive due to the State's *blanket* seizure of Lopez's assets. This Court reasoned that the effect of the State's seizure was to leave Lopez with absolutely no means with which to pay bond, which actually made it more likely that Lopez would appear in court in hopes of recovering his assets.

[23] In *Yeager,* after Yeager's arrest for multiple felonies relating to child battery, the trial court set a $250,000.00 cash bail. Yeager moved to reduce bail, which motion was denied despite a county official's recommendation that Yeager presented no flight risk and could be placed on electronic monitoring. The trial court denied the motion notwithstanding Yeager's nominal criminal history, comprised only of a charge of underage drinking fifteen years earlier; steady, long-term housing, employment, familial ties, and relationships in the community; willingness to pay for electronic monitoring; and pledge to honor the no-contact order regarding the victim, as well as Yeager's parents' assurances that Yeager would appear in court. In reversing on appeal, this Court found that the trial court abused its discretion in denying the motion to reduce bail because: (1) Yeager presented evidence of substantial mitigating factors that showed his recognition of the court's authority to bring him to trial; and (2) the State presented no valid evidence that Yeager posed a risk to the victim or the community.

[24] Here, in addition to Moore's contention that the State seized or froze "virtually all of [his] assets, preventing him from having access to post bond," Moore's

App. Vol. II p. 44, Moore alleged the existence of the following mitigating factors, pursuant to Indiana Code Section 35-33-8-4(b):

> 5. Mr. Moore is sixty-three (63) years old and has lived in Dearborn County for forty (40) years. Additionally, Mr. Moore worked as an engineer for about thirty (30) years.
>
> 6. [ ] Mr. Moore had one (1) prior felony conviction, which appears to be more than two (2) decades old. . . .
>
> 7. Additionally, Mr. Moore also suffers from Sleep Apnea . . . .
>
> 8. As a result of his condition, Mr. Moore requires a continuous positive air pressure (CPAP) machine when he sleeps so that he does not stop breathing.
>
> 9. Defense Counsel has reason to believe that Mr. Moore is now being kept in solitary confinement, apparently for use of his CPAP machine, which has caused Mr. Moore's mental health to suffer substantially. This could have a significant impact on his ability to assist counsel in this case.

Moore's App. Vol. II pp. 44-45.

[25] In considering the Indiana Code Section 35-33-8-4(b) factors, Moore's longtime residency and homeownership in Dearborn County certainly inure to his benefit. *See* I.C. § 35-33-8-4(b)(1). Regarding the second factor, "the defendant's employment status and history and his ability to give bail[,]" we find that this factor weighs in favor of the State. *See* I.C. § 35-33-8-4(b)(2). Moore testified that he had a thirty-year career as an engineer, was laid off at

age fifty-eight, subsequently worked part-time, and 'finally just said enough[,]" and began collecting Social Security income in July 2019. Tr. Vol. II p. 55. By his own account, Moore was not tied to the community by employment at the time of the hearing and had unfettered access to Social Security income and home equity. As to the third factor, "the defendant's family ties and relationships[,]" the record reveals that Moore presented no evidence to the trial court regarding this factor. *See* I.C. § 35-33-8-4(b)(3). We find that this factor inures to the State's benefit because Moore's wife, and presumed closest family member, is his co-defendant.

[26] Lastly, we afford considerable weight to the seventh factor: "the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance[.]" *See* I.C. § 35-33-8-4(b)(7). Here, the State presented the following evidence: Moore has previously been convicted of a felony offense. Detective Pieczonka testified that, in his training and experience, large sums of money are typically found near drug operations. Moore appeared to have been running a significant marijuana growing operation on his Dearborn County premises for several years and faced prosecution for two Level 2 felonies, one Level 3 felony, two Level 5 felonies, and three Level 6 felonies. Although Moore was laid off in 2015 and reported joint income, since 2015, of approximately $40,000.00 per year, law enforcement seized from Moore approximately one million dollars in assets—

consisting of cash, silver bars and coins,[6] and deposited monies. Moreover, Moore testified that he no longer worked as an engineer, owed no debts, and owned his Dearborn County residence free and clear. The State also did not seize Moore's residence or freeze the bank account that held Moore's Social Security income. The State, thus, presented sufficient evidence relevant to the risk of Moore's nonappearance to face trial. Further, given the recovery of twenty to thirty guns from Moore's premises, many of which were loaded, the State also presented evidence that Moore constituted a threat to the physical safety of the community.

[27] In contrast to *Lopez*, the State did not seize all of Moore's assets. *See* Tr. Vol. II pp. 48-49 (testimony that the State did not seize Moore's home, his vehicles, or his Social Security income); *see also* State's Br. p. 31 ("Moore still had funds at his disposal to post the reasonable bond set by the trial court."). Also, unlike in *Yeager*, Moore's presentation of additional evidence of substantial mitigating factors failed to persuade the trial court that Moore recognized its authority to bring him to trial. Additionally, and unlike in *Yeager*, the State presented evidence that Moore presented a threat to the community.

[28] The trial court initially set bond at $100,000.00 cash only and $75,000.00 surety only based upon the State's arguments that Moore presented a substantial risk of flight and posed a threat to the community. On Moore's motion, the trial

---

[6] The seized assets included at least 360 ".999 Fine Silver 1 oz." silver bars and 642 ".999 Fine Silver 1 Troy oz." silver coins. Moore's App. Vol. II p. 147.

court reduced its initial bond setting to $75,000.00 cash only and $75,000.00 surety only but was undeterred from its initial determination that Moore presented a substantial risk of flight and posed a threat to the community. The State's subsequent change of heart and newfound openness to releasing Moore on his own recognizance to electronic home monitoring did not require the trial court to disregard the State's initial presentation of evidence.

[29] Based on our review of the Indiana Code Section 35-33-8-4(b) factors and Moore's continued unfettered access to Social Security income and home equity, we conclude that the trial court acted within its discretion when it declined to further reduce Moore's bond. *See* I.C. § 35-33-8-5(c) ("When the defendant presents additional evidence of substantial mitigating factors, . . . the court *may* reduce bail."). We also find that the trial court did not set bond at an amount higher than was reasonably calculated to ensure Moore's presence in court. Because the trial court's bond setting was not against the logic and effect of the facts and circumstances before the trial court, we find no abuse of discretion.

### B. Indiana Criminal Rule 26

[30] Moore also argues that the trial court "failed to faithfully apply the principles of the newly implemented Criminal Rule 26" when it "required Moore to post more than $82,000 in money bail before he could be released to pretrial home detention" and denied the motion for bond reduction, despite the State's apparent willingness "to release Moore to home detention without the need to

post money bail[.]" Moore's Br. p. 18. Indiana Criminal Rule 26 provides, in part, as follows:

> **(A)** *If an arrestee does not present a substantial risk of flight or danger to self or others*, the court should release the arrestee without money bail or surety subject to such restrictions and conditions as determined by the court except when:
>
> > (1)  The arrestee is charged with murder or treason.
> >
> > (2)  The arrestee is on pre-trial release not related to the incident that is the basis for the present arrest.
> >
> > (3)  The arrestee is on probation, parole or other community supervision.
>
> **(B)**   *In determining whether an arrestee presents a substantial risk of flight or danger to self or other persons or to the public, the court should utilize the results of an evidence-based risk assessment approved by the Indiana Office of Court Services, and such other information as the court finds relevant.*  The court is not required to administer an assessment prior to releasing an arrestee if administering the assessment will delay the arrestee's release.
>
> **(C)**   If the court determines that an arrestee is to be held subject to money bail, the court is authorized to determine the amount of such bail and whether such bail may be satisfied by surety bond and/or cash deposit.  The court may set and accept a partial cash payment of the bail upon such conditions as the court may establish including the arrestee's agreement that all court costs, fees, and expenses associated with the proceeding shall be paid from said partial payment.  If the court authorizes the acceptance of a cash partial payment to satisfy bail, the court shall first secure the arrestee's agreement that, in the event of failure to appear as scheduled, the arrestee shall forfeit the deposit and must also pay such additional amounts as to satisfy the full amount of bail plus associated court costs, fees, and expenses . . . .

Ind. Crim. R. 26 (emphasis added).

Indiana Criminal Rule 26 is predicated on a trial court's threshold determination that the defendant "does not present a substantial risk of flight or danger to himself or others." The trial court here found otherwise and, pursuant to Indiana Criminal Rule 26(C), prescribed terms of Moore's pre-trial release, subject to additional conditions, if Moore paid a surety bond. The trial court, thereby, complied with Indiana Criminal Rule 26, and Moore's claim fails.

## Conclusion

Moore was not denied a prompt initial hearing. The trial court did not set an excessive bond and complied with Indiana Criminal Rule 26. We affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.